FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 05, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GREG WILLIAMS and RACHELUE WILLIAMS, a marital community,<br><br>                      Plaintiff,<br><br>v.<br><br>QUALITY SERVICES MOVING; and EDWARD GRAVES,<br><br>                      Defendants. | NO: 4:19-CV-5075-RMP<br><br>ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

BEFORE THE COURT is Defendants' Motion for Partial Summary Judgment. ECF No. 18. The Court has considered the record, the briefing, the relevant precedent, and is fully informed.

**BACKGROUND**

In July of 2018, Plaintiff Greg Williams hired Defendant Quality Services Moving (QSM) to move his belongings from Virginia to Richland, Washington. ECF No. 19-2 at 1. Mr. Williams asserts that the items were to be picked up at his

ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 1

home in Virginia on August 1, 2018, and that the items would be delivered on August 9th or 10th to his new house in Richland. *Id*.

QSM arrived at Plaintiffs' new home in Richland on September 12, 2018. ECF No. 19-2 at 2. However, Mr. Williams asserts that QSM had not hired a moving crew to unload the items at the Richland house, and the truck driver was unable to complete the unloading process by the end of the day. *Id*. Thus, the truck driver left the house without unloading all of Plaintiffs' belongings. *Id*.

On September 13, 2018, Mr. Williams spoke with Defendant Edward Graves, an employee of QSM, about his undelivered belongings. Eventually, Mr. Graves requested that Mr. Williams provide proof of the costs that his family had incurred due to QSM's delay in shipping their belongings. *Id*. Mr. Williams sent Mr. Graves receipts totaling $4,117.00 in travel and lodging expenses, and authorized QSM to charge his credit card for the cost of the move, minus the $4,117.00 in expenses. *Id*.

That same day, Plaintiff Rachelue Williams made a complaint to the Better Business Bureau (BBB) regarding QSM's unfinished delivery. ECF No. 19-3 at 1. Mr. Williams asserts that, after Defendants QSM and Graves discovered the BBB complaint, they refused to return the Williams' belongings unless the Williams signed a settlement agreement, which included a provision requiring the Williams to withdraw the BBB complaint. ECF No. 19-2 at 2. Plaintiffs refused to sign the proposed settlement agreement and did not rescind their BBB complaint. Mr. Williams maintains that Mr. Graves and QSM removed the remainder of their

ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 2

belongings to an unknown location, hiding them in retaliation for the BBB review and for refusing to sign the settlement agreement. *See id*. at 2–3.

On September 14, 2018, Plaintiffs authorized QSM to charge the complete remaining balance for delivery, despite negotiating a discount based on QSM's delay. *Id*. at 3. Mr. Williams maintains, "QSM did not respond, did not charge the remaining balance, and did not deliver our belongings." *Id*.

In response to the BBB complaint, Mr. Williams asserts that QSM created a fake invoice for $7,000, to justify withholding Plaintiffs' goods. ECF No. 19-2 at 3. On October 9, 2018, Plaintiffs filed a complaint with the Washington State Attorney General's Office. *Id*. QSM responded that Plaintiffs still owed $4,756.66. *Id*. On November 5, 2018, Plaintiffs sent a cashier's check for $4,756.66, so that they could finally receive their undelivered items. *Id*.

Plaintiffs maintain that, on November 19, 2018, QSM indicated that it would not cash Plaintiffs' check. *Id*. However, QSM did not send the check back to them. *Id*. At that time, Plaintiffs still did not know where their belongings were.

On November 27, 2018, QSM mailed Plaintiffs the key to a storage unit containing some, but not all, of Plaintiffs' undelivered belongings. *Id*. Mr. Williams argues, "QSM and Graves stole, hid, and held our belongings hostage in retaliation for the complaints we made to the BBB and Washington State Attorney General. Despite my multiple attempts to pay the remaining amounts owed for the transport of our belongings, QSM and Graves attempted to bully us and pressure us into

ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 3

retracting our public complaints." *Id*. at 4. Plaintiffs report that they have suffered severe emotional distress due to Defendants' actions.

Defendants argue that they did not attempt to coerce or bully Plaintiffs into withdrawing their public complaints. Rather, Defendants claim that they proposed a settlement agreement in response to a payment dispute, which included a provision requiring Plaintiffs to retract their public complaints. Defendants maintain that the proposed settlement agreement was part of the normal claims process and that, while the shipment of Plaintiffs' goods was delayed, Defendants did not steal or hide Plaintiffs' belongings due to negative reviews.

Plaintiffs filed this lawsuit in April of 2019. The operative Complaint alleges that Defendants violated the Carmack Amendment and Washington's Consumer Protection Act (WCPA). ECF No. 6 at 8–9. Additionally, Plaintiffs have alleged a claim of intentional infliction of emotional distress (IIED) under Washington law. *Id*.

On May 7, 2020, Defendants filed this Motion for Partial Summary Judgment, arguing that the Carmack Amendment preempts Plaintiffs' state law claims. Accordingly, Defendants have moved for summary judgment on Plaintiffs' WCPA and IIED claims. Defendants also assert that, even if Plaintiffs' IIED claim is not preempted, summary judgment still is warranted on that claim.

# LEGAL STANDARD

A court may grant summary judgment where "there is no genuine dispute as to any material fact" of a party's prima facie case, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A genuine issue of material fact exists if sufficient evidence supports the claimed factual dispute, requiring "a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). A key purpose of summary judgment "is to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 324.

The moving party bears the burden of showing the absence of a genuine issue of material fact, or in the alternative, the moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's prima facie case. *Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party to set forth specific facts showing a genuine issue for trial. *See id.* at 324. The nonmoving party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322 n.3 (internal quotations omitted).

The Court will not infer evidence that does not exist in the record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990). However, the Court will

"view the evidence in the light most favorable" to the nonmoving party. *Newmaker v. City of Fortuna*, 842 F.3d 1108, 1111 (9th Cir. 2016). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## DISCUSSION

**The Carmack Amendment**

At issue in this case is whether the Carmack Amendment preempts Plaintiffs' intentional infliction of emotional distress claim and CPA claim. "The Carmack Amendment is a federal statute that provides the exclusive cause of action for interstate shipping contract claims, and it completely preempts state law claims alleging delay, loss, failure to deliver and damage to property." *White v. Mayflower Transit, LLC*, 543 F.3d 581, 584 (9th Cir. 2008). The United States Supreme Court has held that, by enacting the Carmack Amendment, "Congress superseded diverse state laws with a nationally uniform policy governing interstate carriers' liability for property loss." *Id*. (quoting *New York, New Haven & Hartford Ry. Co. v. Nothnagle*, 346 U.S. 128, 131 (1953)).

The Carmack Amendment provides:

> A carrier providing transportation or service . . . shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service . . . are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another

carrier over whose line or route the property is transported in the United States . . . when transported under a through bill of lading . . .

49 U.S.C. § 14706(a)(1). The Carmack Amendment also contains a savings clause, which limits its preemptive effect. That savings clause "preserves rights and remedies 'not inconsistent with the rules and regulations prescribed by the provisions of th[e] act.'" *Smith v. United Parcel Serv.*, 296 F.3d 1244, 1247 (quoting *Adams Express Co. v. Croninger*, 226 U.S. 491, 507 (1913)).

***Whether Plaintiffs' IIED Claim is Preempted***

First, the Court considers whether the Carmack Amendment preempts Plaintiffs' IIED claim. To decide when the Carmack Amendment preempts an IIED claim, the Ninth Circuit has adopted a test that focuses on the carrier defendant's conduct. The Ninth Circuit, adopting the Eleventh Circuit's reasoning, has explained that "only claims based on *conduct* separate and distinct from the delivery, loss of, or damage to goods escape preemption." *White*, 543 F.3d at 585 (quoting *Smith*, 296 F.3d at 1248–49 (emphasis in original)). In other words, when the IIED claim arises "from the same conduct as the claims for delay, loss, or damage to shipped property," then the Carmack Amendment preempts it. *Id.* at 586.

However, when a carrier takes some separate action, unrelated to the carrier's contractual duty to transport goods, to intentionally harm the plaintiff, then an IIED claim is not preempted. *See id.* at 585 (citing *Smith*, 196 F.3d at 1249). For instance, the Ninth Circuit has explained that, when a carrier lies to the customer and

ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 7

engages in a "four-month course of deception pertaining to [their] nondelivery," the Carmack Amendment does not preempt an IIED claim flowing from those actions. *Id.* (quoting and analyzing *Gordon v. United States Van Lines, Inc.*, 130 F.3d 282, 289 (7th Cir. 1997)).

Here, Plaintiffs' IIED claim is based on actions that are distinct from the shipment and delivery of their belongings. Their claim is based on Defendants' actions taken in response to Ms. Williams' BBB complaint and Plaintiffs' eventual complaint to the Washington State Attorney General. Mr. Williams asserts that after he and Ms. Williams refused to sign the proposed settlement agreement, which would have required them to remove their public complaints about QSM, Defendants refused to complete their delivery and moved Plaintiffs' goods to an unknown location. *See* ECF No. 19-2 at 3. Mr. Williams states that even though he told QSM to charge the credit card on file for the remaining, contested balance, QSM refused to charge the card and kept his and Ms. Williams' belongings hidden for over one month. *See id.*

Because Plaintiffs' IIED claim is premised on actions distinct from Defendants' late delivery and failure to deliver, the Carmack Amendment does not preempt Plaintiffs' IIED claim.

***Whether Plaintiffs' WCPA Claim is Preempted***

Next, the Court considers whether Plaintiffs' WCPA Claim is preempted by the Carmack Amendment. The WCPA declares unlawful all "unfair methods of

ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 8

competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020.

When the Ninth Circuit adopted its conduct-based preemption test in *White*, it did so expressly in the context of IIED claims. *White*, 543 F.3d at 586. Plaintiffs in this case argue that the conduct-based approach to determining Carmack Amendment preemption should be applied to their WCPA claim as well. They maintain, "[W]here a carrier's conduct is not in furtherance of the contract for transport and delivery but serves some other extra-contractual purpose (like bullying, and coercion) the Carmack Amendment does not preempt state and common law claims." ECF No. 19.

At least one district court in the Ninth Circuit has adopted Plaintiffs' reasoning. Relying on the language of the Carmack Amendment and persuasive precedent from the First, Fifth, and Seventh Circuits, the Southern District of California has found that, "the Carmack Amendment does not purport to regulate all transactions merely because a carrier and a shipper are involved." *Meadowgate Techs., LLC v. Fiasco Enters., Inc.*, CASE NO. 17cv230-LAB (KSC), 2018 WL 1400678, at *2 (S.D. Cal. Mar. 20, 2018) (citing *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 382 (5th Cir. 1998); *Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 289 (7th Cir. 1997); and *Rini v. United Van Lines, Inc.*, 104 F.3d 502, 506 (1st Cir. 1997)).

In *White*, the Ninth Circuit explained that the Carmack Amendment "completely preempts state law claims alleging delay, loss, failure to deliver and damage to property." *White*, 543 F.3d at 584. The court also explained that the Carmack Amendment "constitutes a complete defense to common law claims against interstate carriers for negligence, fraud and conversion, even though these claims may not be completely preempted." *Id*. However, the court did not address state law claims brought pursuant to a state's consumer protection laws. No precedent precludes this Court from applying the Ninth Circuit's conduct-based preemption test to Plaintiffs' WCPA claim. Indeed, the Ninth Circuit has not addressed whether and when the Carmack Amendment preempts a WCPA claim. Given the Ninth Circuit's reasoning in *White*, as well as the precedent upon which it relied, the Court finds that it is appropriate to apply the Ninth Circuit's conduct-based preemption test to Plaintiffs' WCPA claim.

Plaintiffs argue that the conduct upon which their WCPA claim is based is distinct from the transportation and shipment of Plaintiffs' belongings, such that it is not preempted by the Carmack Amendment. Specifically, Plaintiffs assert that Defendants engaged in an unfair or deceptive business practice when they cancelled Plaintiffs' delivery because Plaintiffs refused to sign their settlement agreement and refused to remove a negative online review. ECF No. 6 at 8. Plaintiffs also argue that Defendants violated the CPA when they provided false responses to Plaintiffs'

complaints to Plaintiffs' BBB complaint, to make it appear to the BBB that they were justified in withholding Plaintiffs' belongings. *Id*.; ECF No. 19-2 at 3.

Again, these actions are "separate and distinct" from any claims arising from damage to Plaintiffs' property, failure to deliver, or untimely delivery. *See White*, 543 F.3d at 585. Accordingly, the Carmack Amendment does not preempt Plaintiffs' WCPA claim.

**Plaintiffs' IIED Claim**

Defendants argue in the alternative that Plaintiffs' IIED claim should be dismissed as a matter of law because Plaintiffs have not provided sufficient information to establish the prima facie elements of their claim. ECF No. 18 at 1.

To succeed on this claim, Plaintiffs must prove: "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) the actual result to plaintiff[s] of severe emotional distress." *Kloepfel v. Bokor*, 66 P.3d 630, 632 (Wash. 2003). Generally, whether conduct is "sufficiently outrageous" is a question of fact for the jury. *Spurell v. Bloch*, 701 P.2d 529, 535 (Wash. Ct. App. 1985). However, on summary judgment, the court must "determine in the first instance that reasonable minds could differ on whether the conduct has been sufficiently extreme and outrageous to result in liability." *Id*.

Specifically, Defendants argue that the Williams cannot establish the first element of their IIED claim, which requires that the conduct be "extreme and outrageous." Defendants assert: "Plaintiffs do not meet the first element of extreme

ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 11

and outrageous conduct, because in this case Defendants simply ceased delivery of goods on September 14, 2018, due to the parties being unable to come to a settlement agreement. There is nothing extreme or outrageous about ceasing the delivery of household goods . . . ." ECF No. 18 at 7.

Recently, the Washington Court of Appeals acknowledged that Washington precedent is inconsistent on the issue of outrageousness in the IIED context. In *Spicer v. Patnode*, Division III of the Court of Appeals explained, "As the cases reflect, what constitutes outrage is nebulous and difficult to define." 443 P.3d 801, 809 (Wash. Ct. App. 2019). However, the court then identified three takeaways from Washington precedent that are clear: (1) the conduct must "go beyond all bounds of decency as to be utterly intolerable in civilized community"; (2) the conduct must be more than "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities"; and (3) "somewhere in between these standards, the question of liability passes from a court of law to the trier of fact." *Id*.

The Court finds that the facts of this case fall "somewhere in between." *See id*. The conduct complained of here, which is sufficiently supported by Plaintiffs' declarations and circumstantial evidence for the purposes of summary judgment, is more than a mere annoyance or threat. Defendants possessed many of Plaintiffs' personal belongings and refused to deliver them, even after Plaintiffs tried to pay the remaining, contested balance of the delivery. Defendants had leverage over Plaintiffs, and, according to Plaintiffs, used that leverage to pressure them into

ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 12

retracting their complaints to the BBB and Washington State Attorney General. Due to the fact that Defendants were in possession of many of Plaintiffs' personal belongings, Defendants likely were aware that withholding those personal belongings would cause distress. Indeed, Plaintiffs argue that Defendants' actions in withholding and hiding their belongings were designed to coerce them into signing a document that they did not want to sign, the proposed settlement agreement.

The Court acknowledges that there are questions of fact as to Defendants' motives, but those questions must be decided by the factfinder, not the Court. Based on the record, reasonable minds could differ as to whether Defendants' conduct was extreme and outrageous, and any conclusion on that issue will require factfinding. Therefore, the Court rejects Defendants' argument that their conduct was not sufficiently outrageous as a matter of law.

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion for Partial Summary Judgment, **ECF No. 18**, is **DENIED**.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel.

**DATED** August 5, 2020.

                            *s/ Rosanna Malouf Peterson*
                           ROSANNA MALOUF PETERSON
                                United States District Judge